GREGORY and others *v.* ORRALL and others.

(*Circuit Court, D. Massachusetts.* June 16, 1881.)

1. SALVAGE—EXTRAORDINARY REPAIRS—CONTRIBUTION.

Where such a casualty happens to a vessel as requires salvage services to be rendered and extraordinary repairs to be made, owners of the goods on board, if called upon to do so, must contribute to the expense thereby incurred, provided such casualty was due in no way to the previous negligence of the master.

2. EVIDENCE—BURDEN OF PROOF.

The burden of making out negligence is on such owners.

In Equity.

*C. F. & T. H. Russell,* for complainants.

*John C. Dodge & Sons,* for defendants.

LOWELL, C. J. This bill is brought by the owners of the three-masted schooner Cephas Starret, against the shippers of a part of the cargo, for a contribution to general average. On the twenty-sixth of June, 1879, the schooner was lying at New Orleans, ready for sea, having taken on board the timber belonging to the defendants, which was stowed in the hold, and twenty bales of compressed rags, the property of other consignees, stowed between decks. The crew had been shipped, but only the mate, boatswain, and cook had come on board. The master spent the night on shore. When he left the ship the mate was on shore, but was expected to return soon. The boatswain and cook usually slept on deck, on top of the forward house. He gave general directions to them to keep a sharp lookout, not meaning that they should keep watch, and none was kept, so far as he knows. The mate, I suppose, was to sleep in the cabin. During the night a fire broke out on board the ship, of which the master was first informed by the mate. The charges and expenses for which contribution is asked, are for salvage paid for steamers, or floating fire-engines, used in putting out the fire, and for extraordinary repairs and supplies, rendered necessary by damage suffered in the course of putting out the flames.

The defendants allege that the loss was caused in whole or in part by the negligence of the master. If this is made out, the ship-owners must bear the whole, because it is only when the carrier has been involved in a peril by a superior force, or by misfortune, without his own fault, that he can throw a part of the burden of relieving the property imperiled upon those persons whose goods he was bound to carry and protect with diligence and reasonable skill, as in the instance commonly put in the books of the jettison of goods which

had been stowed on deck by the master without the authority of the owners or of an established usage.

I understand it to be usual in the port of New Orleans, as in other ports, to maintain no watch upon a vessel with an ordinary cargo, such as cotton, when she has been fully loaded and is lying at a wharf. Unless there are some peculiarly valuable goods, easily stolen, ordinary care, as in fact exercised, does not require a watch to be kept. It is, however, usual to close the hatches of vessels at night, and one of the hatches of this vessel was left open. The question, therefore, is whether this was such negligence as will charge the master and owners with the loss.

The master is the only witness examined who was on board the ship. He is of the opinion that the fire was set by an incendiary, and he gives some reasons for this conclusion. If this be so, then the open hatch may have tempted or aided the commission of the crime. Such is the argument.

The negligence is not made out. It does not appear to me that a vessel with two men asleep on her deck, and one in her cabin, is likely to have been set on fire; nor that it would have been safer to stow the hatches and leave the ship with no one on board. I do not understand that hatches are necessarily or usually fastened for the night so securely that an incendiary would have the least difficulty in prying them open; or that it is at all probable that the state of the hatches could be observed at night, and have tempted a stroller. If it was so light that the hatches could be seen, I suppose the men lying on the forward house could be seen. That a clerk sleeps in a shop is considered by underwriters a great protection against thieves and incendiaries, and so it is on board ship, I suppose.

The information which we have of the causes and circumstances of the fire is meager, but this does not shift the burden of proof. The defendants are to make out negligence. The master tells us what his orders and dispositions were; whether they were carried out I do not know. It may be that the mate and both the men left the ship, or one of them may have set the fire; but there is no proof of any of these things. If the master's orders were reasonably prudent, and there is no evidence that they were not obeyed, and he was not negligent in sleeping on shore himself, the defence fails.

Decree for the complainants.